

**FILED**

Jun 11 2020, 7:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
KENNY FERRAND

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLANTS
FLS, RER, RS, AND BILLY FERRAND

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEY FOR APPELLEE

Fred L. Cline
Oliver & Cline, LLP
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ferrand Laser Screeding, Inc., Reliable Equipment Rental Inc., Reliable Screeding Inc., Kenny Ferrand, and Billy Ferrand, *Appellants, Cross-Appellees, Defendants,* v. Concrete Management Solutions, LLC, *Appellee, Cross-Appellant, Plaintiff* | June 11, 2020 Court of Appeals Case No. 19A-PL-1947 Appeal from the Putnam Circuit Court The Honorable Matthew Headley, Judge Trial Court Cause No. 67C01-1508-PL-0244 |

**Vaidik, Judge.**

# Case Summary

[1] Concrete Management Solutions, LLC (CMS) brought an action against Ferrand Laser Screeding, Inc., Reliable Equipment Rental Inc., Reliable Screeding Inc., Kenny Ferrand, and Billy Ferrand ("the Defendants"), seeking to domesticate and collect on an Ohio judgment. The trial court ruled for CMS on some claims and for the Defendants on the others. The Defendants appeal, and CMS cross-appeals. We hold that the Ohio court lacked personal jurisdiction, that as a result the Ohio judgment is void, and that the Defendants are therefore entitled to judgment on all of CMS's claims.

# Facts and Procedural History

[2] In 2010, CMS, an Ohio limited liability company, contracted with Subway Restaurants to construct a concrete parking lot in Milford, Connecticut. CMS then hired Ferrand Laser Screeding, Inc. (FLS), an Indiana corporation owned and operated by Billy Ferrand, to provide laser-screeding services on the project. (Laser screeding is a method of leveling concrete.) In early 2012, CMS was sued in relation to the project in Medina County, Ohio. It then filed a third-party complaint against FLS, claiming that FLS "breached its agreement with CMS by failing to properly finish the parking lot causing divots in the concrete, uneven concrete and visually unappealing concrete." Appellants' App. Vol. II p. 78. FLS did not answer the complaint, and in June 2012 CMS obtained a default judgment for $155,121.54.

[3]     In August 2015, having received no payments on the judgment, CMS brought an action against FLS in Putnam County, Indiana. CMS also named as defendants Billy Ferrand, Billy's brother Kenny Ferrand, Reliable Equipment Rental Inc. (RER), and Reliable Screeding Inc. (RS). CMS alleged that after it sued FLS in Ohio, Billy and Kenny formed RER and RS in Indiana and then executed an agreement transferring FLS's assets to RER. According to CMS, "RER was formed to transfer the business of FLS to RER for the sole purpose of avoiding the creditors of FLS and to avoid paying FLS's debt to Plaintiff." *Id.* at 34. In Count I of the complaint, CMS requested domestication of the Ohio judgment. In Count II, it alleged that the Defendants "engaged in fraudulent acts in furtherance of a fraudulent scheme to transfer all of the assets of FLS out of the reach of CMS" and that as a result the transfer was voidable under the Uniform Fraudulent Transfer Act (specifically, Indiana Code section 32-18-2-14). *Id.* at 33. In Count III, CMS claimed that RER is an "alter ego" of FLS and is liable to CMS for FLS's debt. *Id.* at 34.

[4]     The Defendants responded to CMS's complaint with a motion to dismiss, arguing, among other things, that the Ohio court lacked personal jurisdiction over FLS and that the Ohio judgment was therefore void. After a hearing, the trial court denied the motion to dismiss. The Defendants then moved for summary judgment, making the same personal-jurisdiction argument and also challenging CMS's fraudulent-transfer claim. The trial court denied that motion in January 2018. The same month, CMS amended its complaint to add a claim that transferring FLS's assets constituted criminal fraud under Indiana

Code section 35-43-5-4(8) and that CMS is therefore entitled to treble damages under Indiana's Crime Victims Relief Act (CVRA), *see* Ind. Code § 34-24-3-1. CMS also added an allegation that "Billy and Kenny are liable to Plaintiff for the debts of FLS because they are alter egos of FLS." Appellants' App. Vol. II p. 194.

[5]     The trial court held a bench trial in May 2019. In its final order, the court (1) domesticated the Ohio judgment against FLS and (2) "pierced the corporate veil" of FLS and held the other defendants liable for the judgment. However, the court concluded that CMS had not proven its fraudulent-transfer and CVRA claims and entered judgment for the Defendants on those claims.

[6]     The Defendants now appeal, and CMS cross-appeals.

# Discussion and Decision

[7]     The Defendants renew their argument that the Ohio court lacked personal jurisdiction over FLS and that the Ohio judgment is therefore void and not eligible for domestication in Indiana. They also argue that even if the Ohio judgment is valid, the trial court erred by piercing FLS's corporate veil and holding the other defendants liable for the judgment. CMS disputes those arguments and, in its cross-appeal, asserts that the trial court erred by rejecting its fraudulent-transfer and CVRA claims. We agree with the Defendants that the Ohio court lacked personal jurisdiction and therefore reverse the trial court's domestication of the Ohio judgment. And because CMS's veil-piercing,

fraudulent-transfer, and CVRA claims are based on the existence of a valid Ohio judgment, those claims are moot, and the trial court should have dismissed them without reaching their merits.[1]

[8]    A judgment of a sister state is presumed to be valid but is "open to collateral attack for want of personal jurisdiction or subject matter jurisdiction." *Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 439 (Ind. Ct. App. 2002). The party attacking such a judgment has the burden of rebutting the presumption of validity. *Id.* In assessing a claim that a foreign judgment is void for lack of personal jurisdiction, we apply the law of the state where the judgment was rendered. *Id.*

[9]    In Ohio, a trial court can have personal jurisdiction over an out-of-state defendant only if the state's "long-arm statute and the applicable rule of civil procedure confer jurisdiction." *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010). The jurisdiction granted by Ohio's long-arm statute is more limited than long-arm jurisdiction under Indiana law. In Indiana, long-arm jurisdiction is governed by Indiana Rule of Trial Procedure 4.4(A), which provides:

> **(A)  Acts Serving as a Basis for Jurisdiction.** Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as

---

[1] CMS does not argue that its veil-piercing, fraudulent-transfer, and CVRA claims are viable without the domestication of the Ohio judgment.

to any action arising from the following acts committed by him or her or his or her agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or

(8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection

> of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.
>
> **In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.**

(Emphasis added). That last provision—"a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States"—means that an Indiana trial court can have personal jurisdiction over an out-of-state defendant even if the action does not arise from the defendant committing one of the acts enumerated in subsections (1)-(8). In other words, Indiana has "general jurisdiction" over an out-of-state defendant who has had "continuous and systematic" contacts with Indiana "even in causes of action unrelated to the defendant's contacts with" Indiana. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006).

[10] Like Indiana's Trial Rule 4.4(A), Ohio's long-arm statute—Ohio Revised Code 2307.382—provides that a court has personal jurisdiction over an out-of-state defendant if the action arises from the defendant committing one of several acts in Ohio:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.[2]

Unlike Indiana's rule, though, the Ohio statute does not include an "any constitutional basis" provision. As a result, it has been held that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant **only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute**." *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012) (emphasis added). Ohio's long-arm statute does not allow for "general jurisdiction" over out-of-state defendants—an Ohio court has personal jurisdiction over such a defendant only if the action arises from the defendant committing one of the specifically enumerated acts in Ohio.[3]

Here, the Defendants contend that the only act on the Ohio list that could apply is the first one—"Transacting any business in this state"—and that FLS contracting with an Ohio company to work on a Connecticut project did not amount to "transacting business" in Ohio. CMS does not dispute that "Transacting any business in this state" is the relevant subsection but argues

---

[2] Ohio Rule of Civil Procedure 4.3 largely tracks this statute.

[3] The Ohio Legislature is currently considering a bill—House Bill 272—that would add an "any constitutional basis" provision to the state's long-arm statute. *See* House Bill 272, https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA133-HB-272 (last visited June 9, 2020). Of course, even if that bill becomes law, it would not impact our analysis of whether the Ohio court had personal jurisdiction over FLS in 2012.

that FLS did "transact business" in Ohio when it entered into the contract. We agree with the Defendants.

[12] The Defendants direct us to *Ashton Park Apartments, Ltd. v. Carlton-Naumann Construction, Inc.*, No. L-08-1396, 2009-Ohio-6335, 2009 WL 4446934 (Ohio Ct. App. Dec. 4, 2009). There, an Ohio couple contracted with a Florida construction company to build a house in Florida. After a defect was discovered in the house, the construction company was sued in Ohio. The company moved for summary judgment, claiming that the Ohio court lacked personal jurisdiction over it. The trial court agreed and dismissed the action. The Court of Appeals affirmed. The court acknowledged that "[e]very aspect of the contract" concerning the buyers—their execution of the contract, payments, and communication—involved Ohio, 2009 WL 4446934 at *4, but ultimately held that the construction company "was not 'transacting business' in Ohio by entering into a single contract with two Ohio residents to build a home in Florida," *id.* at *5.

[13] Despite the Defendants' heavy reliance on *Ashton Park*, CMS fails to even acknowledge the decision. Instead, CMS argues that this case is governed by *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477 (Ohio 1990). There, a Georgia company entered into a lease for a storeroom in a Kentucky mall owned by an Ohio company. The lease was for ten years and required the Georgia company to send all lease payments to an Ohio address. The Ohio company later sued the Georgia company in Ohio, alleging that the Georgia company was in default. The Georgia company moved to dismiss for

lack of personal jurisdiction. The trial court granted the motion. The Ohio Supreme Court reversed, holding that "a commercial nonresident lessee, for purposes of personal jurisdiction, is 'transacting any business' within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio." *Id.* at 480.

[14]　The case before is much more like *Ashton Park* than *Kentucky Oaks*. Unlike the Georgia lessee in *Kentucky Oaks*, which agreed to make payments to an Ohio lessor for ten years (a fact that CMS does not mention in its brief), FLS did not agree to any ongoing obligations in Ohio. To the contrary, just as the construction company in *Ashton Park* entered into a single contract with two Ohio residents to build a home in Florida, FLS entered into a single contract with an Ohio company to work on a project in Connecticut. Under *Ashton Park*, this did not constitute "transacting business" in Ohio. As such, Ohio's long-arm statute did not confer personal jurisdiction over FLS, and the Ohio judgment is void.

[15]　The trial court should have denied CMS's request for domestication of the Ohio judgment. And because CMS's veil-piercing, fraudulent-transfer, and CVRA claims are moot without the domestication of the Ohio judgment, the trial court should have dismissed them without reaching their merits. We reverse the judgment of the trial court and remand this matter for the entry of a revised judgment consistent with this opinion.

Reversed and remanded.

May, J., and Robb, J., concur.